BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| Allegiance Health Management, Inc., *et al.*, *individually and on behalf of all other similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>MultiPlan, Inc., *et al*.<br><br>Defendants. | MDL No. |

**MEMORANDUM IN SUPPORT OF THE CHICAGO MOVANTS' JOINT MOTION TO TRANSFER RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiffs Allegiance Health Management, Inc.,[1] Live Well Chiropractic PLLC,[2] Ivy Creek of Tallapoosa LLC d/b/a Lake Martin Community Hospital, and Elmore Community Hospital Rural Health Association d/b/a Elmore Community Hospital[3] (collectively, the "Chicago Movants") respectfully submit this memorandum of law in support of their Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings.

Each of the Chicago Movants filed class action complaints in the Northern District of Illinois in which they allege that MultiPlan, Inc., and the nation's leading commercial health insurance companies[4] have conspired to fix, suppress, and stabilize the reimbursement rates paid to healthcare

---

[1] *Allegiance Health Management, Inc., et al. v. MultiPlan, Inc., et al.*, No. 1:24cv3223 (N.D. Ill.) ("*Allegiance*").

[2] *Live Well Chiropractic PLLC v. MultiPlan, Inc., et al.*, No. 1:24-cv-03680 (N.D. Ill.) ("*Live Well*").

[3] *Lake Martin Community Hospital, et al. v. MultiPlan, Inc.*, No. 1:24-cv-03900 (N.D. Ill.) (collectively with *Allegiance* and *Live Well*, the "Chicago Actions").

[4] Chicago Movants have named some or all of the following commercial health insurance companies in their complaints: UnitedHealth Group Inc.; Aetna, Inc.; Elevance Health, Inc.; Centene Corp.; Cigna Group; Health Care Service Corporation ("HCSC"); Humana Inc.; Kaiser Permanente

1

providers for out-of-network healthcare services in the United States in violation of Section 1 of the Sherman Act ("the conspiracy"). At present, one other class action case making similar allegations has been filed in the Northern District of California, and two non-class cases have been filed in the Southern District of New York.

Transfer and centralization of these actions to the Northern District of Illinois before the Honorable Martha M. Pacold—where three of the four class cases are pending, including the first three class cases filed—will advance the efficient resolution of this litigation and serve the convenience of the parties and witnesses. The Northern District of Illinois has extensive experience with multidistrict antitrust litigation and is the most convenient location for the parties and witnesses given the conspiracy's national scope and the significant geographic concentration of the defendants in or near Chicago and on the East Coast.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation concerns the market for reimbursements paid by commercial health insurers to healthcare providers for out-of-network healthcare services. ¶ 60.[5] All major commercial health insurers, including the defendants in the Chicago Actions, participate in this multi-billion-dollar market. ¶¶ 13–17, 194.[6] Healthcare providers who treat patients on an out-of-network basis submit reimbursement claims to their patients' commercial health insurers for the services they provided. ¶¶ 81–86. The Chicago Movants allege that these commercial health insurers and MultiPlan conspired to fix, suppress, and stabilize the reimbursement rates that commercial health insurers pay

---

LLC; Blue Shield of California, Inc.; Blue Cross and Blue Shield of Florida, Inc.; Blue Cross Blue Shield of Michigan Mutual Insurance Co.; and Health Alliance Medical Plans, Inc.

[5] All "¶" references are to paragraphs in the *Allegiance* complaint. ECF No. 1, No. 1:14cv3223 (N.D. Ill.).

[6] The defendants, named as co-conspirators in *Lake Martin*, include MultiPlan, Inc.; Health Care Service Corporation; Aetna, Inc.; Elevance Health, Inc.; Centene Corporation; Cigna Group; United Health Group, Inc.; Humana, Inc.; and Kaiser Permanent LLC.

to healthcare providers for out-of-network healthcare services by agreeing to use MultiPlan's claim "repricing"—*i.e.*, claim suppression—tools to "reprice" reimbursement claims for out-of-network healthcare services. ¶¶ 1, 15–17, 81–86, 298–328. Those algorithmic repricing tools rely on the insurers' real-time, confidential, and detailed claims data to generate reimbursement rates far lower than the "usual and customary" rates that prevailed in the market pre-conspiracy. ¶¶ 15, 81–86. The conspiracy has resulted in billions of dollars in underpayments to healthcare providers, including $22.9 billion in 2023 alone. ¶ 17.

The Chicago Movants include the three earliest-filed class action complaints: *Allegiance* on April 22, 2024, *Live Well* on May 6, 2024, and *Lake Martin* on May 13, 2024. The *Allegiance* case has been assigned to the Honorable Martha M. Pacold. The *Live Well* and *Lake Martin* plaintiffs have moved to relate and consolidate their cases before Judge Pacold.

Later, Healthcare provider Curtis F. Robinson M.D., Inc., d/b/a Panoramic Medicine filed a class action complaint against MultiPlan on May 17, 2024, in the Northern District of California. ECF No. 1, *Panoramic Medicine v. MultiPlan, Inc.*, No. 3:24-cv-02993-SK (N.D. Cal.) ("*Panoramic*"). *Panoramic* has yet to be assigned.

Two similar non-class action complaints are pending in the United States District Court for the Southern District of New York before the Honorable Edgardo Ramos. Adventist Health System Sunbelt Healthcare Corporation filed its complaint on August 9, 2023, against MultiPlan. ECF No. 1, *Adventist Health Sys. Sunbelt Healthcare Corp. v. MultiPlan, Inc.*, No. 1:23cv7031 (S.D.N.Y.) ("*Adventist*"). CHS/Community Health System, Inc. filed a complaint on May 8, 2024. ECF No. 1, *CHS/Comm. Health Sys., Inc.*, No. 1:24-cv-03544 (S.D.N.Y.) ("*CHS*").[7]

---

[7] This memorandum refers to *Allegiance*, *Live Well*, *Lake Martin*, *Panoramic*, *Adventist*, and *CHS* collectively as the "Related Actions."

3

The Chicago Actions and *Panoramic* name MultiPlan and numerous health insurance companies as defendants or co-conspirators. *Adventist* and *CHS* name only MultiPlan as a defendant but seek to hold MultiPlan liable for the same conduct alleged in the Chicago Actions. Collectively, the Related Actions involve similar allegations that MultiPlan and commercial health insurance companies conspired to fix, suppress, and stabilize the reimbursement rates paid to healthcare providers for out-of-network healthcare services in the United States in violation of Sections 1 and 2 of the Sherman Act. Each case alleges that the conspiracy achieved its artificial suppression of reimbursement rates through use of MultiPlan's claim repricing tools and similar factors that corroborate the horizontal price-fixing agreement, including acknowledgements by MultiPlan that it combines commercial health insurers' real-time, confidential, and proprietary claims data for use in its repricing algorithm, dramatic decreases in the reimbursement rates for out-of-network healthcare services, high levels of market concentration and barriers to entry, and many opportunities for collusion. The Related Actions seek compensatory damages and injunctive relief on behalf of healthcare providers from July 1, 2017, at the latest, until the conspiracy ceases.[8]

The Chicago Actions, *Panoramic*, and *CHS* are in similar procedural postures as they are all still in their early stages, no responsive pleadings have been filed, and no discovery has been conducted. In *Adventist*, the parties have fully briefed MultiPlan's motion to dismiss, but the Court has not ruled on it.

## ARGUMENT

**I.    CENTRALIZATION OF THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407.**

"When civil actions involving one or more common questions of fact are pending in different districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer will serve "the convenience of parties and witnesses and will promote the

---

[8] *Panoramic* seeks relief from 2015.

4

just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should transfer the Related Actions to the Northern District of Illinois before the Hon. Martha M. Pacold for coordinated or consolidated pretrial proceedings.

### A. The Related Actions involve common factual questions.

For purposes of Section 1407, common factual questions exist where multiple actions assert similar "core factual allegations" and "can be expected to focus on a significant number of common events, defendants, and/or witnesses." *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

The Related Actions satisfy Section 1407(a)'s requirements because they involve common allegations regarding the identity of conspirators and overlapping conduct, and the Panel routinely finds centralization appropriate for antitrust cases. *See*, *e.g.*, *In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) (finding consolidation appropriate where cases "assert similar claims for violations of federal and state antitrust and consumer protection laws"); *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (same); *In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2003) (same); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) (same).

Each Related Action is also brought on behalf of a healthcare provider or providers and asserts federal antitrust claims. *See In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) (finding consolidation appropriate where cases "share factual questions relating to the existence, scope and effect of an alleged [Sherman Act Section 1] conspiracy"); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) (same); *In re K-Dur Antitrust Litig.*, 176 F. Supp. 2d 1377, 1378 (J.P.M.L. 2001) (same).

The Related Actions, therefore, share one or more common factual questions under Section 1407(a).

5

### B. Centralization would serve the convenience of parties and witnesses and promote the just and efficient conduct of the Related Actions.

Because the Related Actions' factual allegations and legal claims largely overlap, transfer would serve "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a). There are already six actions pending in three districts and additional cases will likely be filed; centralizing these cases under Section 1407 now is the most efficient means of proceeding. *See In re Ranbaxy Generic Drug Application Antitrust Litig.*, 355 F. Supp. 3d 1382, 1382–83 (J.P.M.L. 2019) (centralizing "four actions pending in three districts" even after completion of discovery and a ruling on the defendants' motion to dismiss in one of the cases); *In re: Edward H. Okun I.R.S. |1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) ("[D]enial of either of Wachovia's transfer motions could engender delay, as the Panel may be asked to revisit the question of Section 1407 centralization. Centralizing these actions now under Section 1407 should streamline resolution of this litigation to the overall benefit of the parties and the judiciary."); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

Centralization is also appropriate because the plaintiffs in the Related Actions will undoubtedly pursue substantially similar testimony, documents, and other evidence from MultiPlan, the other defendants, and their co-conspirators. With the Related Actions proceeding in three separate districts in different states with distinct plaintiffs' counsel, centralizing the Related Actions will have "the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (finding transfer to a single

6

judge appropriate to ensure "common witnesses are not subjected to duplicative discovery demands").

Finally, because the Related Actions have many common factual and legal questions, they will also have many overlapping pretrial issues, including the adequacy of the claims and allegations. *See In re: Zimmer Durom Hip Cup Prod. Liab. Litig.*, 717 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) (finding centralization appropriate where it would "prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary").

For these reasons, the Panel should centralize the Related Actions in the interests of justice and efficiency.

## II. THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS.

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the parties' preferences; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation. *See In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). These factors support transfer to the Northern District of Illinois.

### A. The Northern District of Illinois is convenient and accessible.

Because this litigation involves an alleged nationwide conspiracy, the Panel should select a district that is "geographically central and accessible." *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011). There is none better than the Northern District of Illinois. Chicago is centrally located, and its major airports are serviced by direct flights from all of defendants' headquarters, including New York, Indiana, Missouri, Minnesota, California, and Kentucky. ¶¶ 34–40.

7



Source: https://www.flychicago.com/ohare/myflight/non-stop/pages/default.aspx.[9]

**B. Relevant witnesses and evidence will be found in or near Chicago.**

In addition to being a central travel hub for the Midwest and East Coast, Illinois is home to two of the Defendants and geographically proximate to eleven out of the thirteen Defendants named in the Related Actions. Thus, most of the witnesses and evidence relevant to the Related Actions may be found in or near Chicago.

The map below illustrates the proximity of Chicago to relevant witnesses and evidence in the case. Plaintiffs in the Related Actions have named a total of 13 defendants. Each of the defendants is

---

[9] This map reflects daily nonstop flights from Chicago's O'Hare International Airport. Chicago offers a second large airport, Chicago Midway International Airport, with flights to over 80 nonstop destinations. https://www.flychicago.com/midway/myflight/pages/default.aspx.

identified by a red dot on the map below. Seven of the defendants are tightly clustered in or near Chicago. And eleven out of the thirteen defendants are concentrated within relatively close proximity to each other in the Midwest and along the East Coast. Only two of the defendants may be found in California, where *Panoramic* is pending.



Under these circumstances, Chicago is by far the most convenient and central location among the *fora* in which the Related Actions are pending.

**C. Three out of four pending class actions have been filed in Chicago.**

Three of the four pending class actions among the Related Actions, including the first-filed class action, are in the Northern District of Illinois. This concentration evidences a significant connection to the case and reflects a preference for the forum among the Chicago Movants. *See, e.g.*, *In re Cotton Yarn*, 336 F. Supp. 2d at 1384 (selecting district where "six of the seven actions in this

9

litigation are currently pending"); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (selecting district in part because "the vast majority of actions" were pending there); *In re Microcrystalline Cellulose Antitrust Litig.*, 149 F. Supp. 2d 935, 936 (J.P.M.L. 2001) (same); *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019) (selecting district in part because the "three earliest-filed actions are pending there"); *In re Ranbaxy*, 3355 F. Supp. 3d at 1383 (selecting district in part because the "first-filed" action was pending there). In addition, Defendant HCSC is headquartered in Chicago, ¶ 33, and Defendant Health Alliance Medical Plans, Inc. is also incorporated and headquartered in Illinois.[10]

**D. Neither the Northern District of California nor the Southern District of New York presents a better forum for consolidation.**

Neither of the other two jurisdictions in which related cases are pending provides a superior alternative to the Northern District of Illinois.

First, the Southern District of New York—despite hosting the one related case in which briefing on motions to dismiss has begun—could not enhance the efficiency of the action. The *Adventist* and *CHS* cases are presently pending before the Honorable Edgardo Ramos; however, Judge Ramos has indicated that he would have to recuse himself from a case naming Aetna Inc. or Humana Inc. due to financial interests in those companies. *See* Order, *Adventist Health System Sunbelt Healthcare Corp. v. MultiPlan, Inc.*, No. 23-cv-7031 (S.D.N.Y., entered Nov. 6, 2023). Two of the three Chicago Actions, along with the *Panoramic* case, name these entities as defendants. Accordingly, transfer to the Southern District of New York would necessitate reassignment to another jurist in that district, forfeiting any marginal efficiencies gained by consolidating there. *See In re W. States Wholesale Natural Gas Antitrust Litig.*, 290 F. Supp. 2d 1376, 1378 (J.P.M.L. 2003) (declining to consolidate in a California district that raised "potential

---

[10] *See Live Well* Class Action Complaint, No. 1:24-cv-3680 (N.D. Ill.), ECF No. 1 at ¶ 39.

recusal issues"); *In re Cal. Retail Natural Gas & Elec. Antitrust Litig.*, 150 F. Supp. 1383, 1384 (J.P.M.L. 2001) (same).

Second, in sharp contrast to the Northern District of Illinois's central location, ease of access, and proximity, the Northern District of California is an inconvenient forum for consolidation because it would require the vast majority of witnesses and parties, located on the east coast and in the Chicago region, to traverse the continent for pretrial and trial proceedings. When choosing a transfer venue for transfers of convenience, "[t]he convenience of the witnesses is 'often considered to be the most important factor when determining which forum is the most convenient.'" *Maxchief Inv. Ltd. v. Plastic Dev. Grp., LLC*, No. 16-cv-63, 2016 WL 7209553 (E.D. Tenn. Dec. 12, 2016) (quoting *KANL, LLC v. Savage Sports Corp.*, No. 13-cv-265, 2014 WL 1745443, at *3 (E.D. Tenn. Apr. 30, 2014)). It is not, therefore, a "geographically central" jurisdiction, as this Panel requires. *DePuy*, 787 F. Supp. 2d at 1360.

### E. The Panel Should Transfer the Related Actions to Judge Martha M. Pacold

Judge Martha M. Pacold, currently presiding over *Allegiance*, is one of the Northern District of Illinois' "able jurist[s] who has not yet had the opportunity to preside over an MDL." *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. Aug. 1, 2019); *see In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (transferring actions to a judge "who has not yet had an opportunity to preside over an MDL"). Nevertheless, Judge Pacold's significant experience in managing highly complex cases, both before and after she took the bench, commend her for transfer of the Related Actions. Further, the Northern District of Illinois possesses substantial

11

resources and has a track record of efficiency,[11] routinely handles multidistrict antitrust litigation,[12] and has many experienced jurists who can manage this complex multi-party litigation. *See In re Wireless Tels. 911 Calls Litig.*, 259 F. Supp. 2d 1372, 1374 (J.P.M.L. 2003) (transferring to the Northern District of Illinois because "i) one action is pending there, ii) this geographically central location is relatively convenient for the parties, and iii) the Illinois court possesses the necessary resources to be able to devote the time and effort to pretrial matters that this docket is likely to require").

The Northern District of Illinois is an ideal transferee district and Judge Pacold will help steer this litigation on a prudent course.

## CONCLUSION

For the foregoing reasons, the Chicago Movants respectfully request that the Panel transfer and promptly centralize the Related Actions, as well as any case that may be subsequently filed asserting related or similar claims, before the Hon. Martha M. Pacold of the Northern District of Illinois, or any such other judge in the district as the Panel may select.

---

[11] For example, the Northern District of Illinois possesses the tenth fastest median time from filing to disposition in civil cases among federal districts. *See* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.uscourts.gov/file/78409/download (last visited Apr. 26, 2024).

[12] *See, e.g.*, *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022) (transferring to the Northern District of Illinois); *In re Local TV Advert. Antitrust Litig.*, 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018) (same); *In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1376 (J.P.M.L. 2018) (same); *In re: Opana ER Antitrust Litig.*, 65 F. Supp. 3d 1408, 1409 (J.P.M.L 2014) (same); *In re Sulfuric Acid Antitrust Litig.*, 270 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) (same).

Dated: May 20, 2024

Respectfully submitted,

*/s/ Warren T. Burns*
Warren T. Burns
Quinn M. Burns
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
Tel.: (469) 458-9890
wburns@burnscharest.com
qburns@burnscharest.com

Korey A. Nelson
Amanda K. Klevorn
Natalie Earles
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Tel: (504) 799-2845
knelson@burnscharest.com
aklevorn@burnscharest.com
nearles@burnscharest.com

Matthew S. Tripolitsiotis
BURNS CHAREST LLP
757 Third Ave., 20th Floor
New York, NY 10017
Tel: (469) 895-45505269
mtripolitsiotis@burnscharest.com

Christopher Cormier
Matthew Strauser
BURNS CHAREST LLP
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Tel.: (202) 577-3977
ccormier@burnscharest.com
mstrauser@burnscharest.com

Derrick G. Earles
LABORDE EARLES
1901 Kaliste Saloom Road
Lafayette, Louisiana 70508
Tel.: (337) 223-9925
digger@onmyside.com

Robert A. Clifford
Shannon M. McNulty
CLIFFORD LAW OFFICES, P. C.
120 N. LaSalle Street, 36th Floor
Chicago, IL 60602
312.899.9090
213.251.1160 Facsimile

*Counsel for the Allegiance Plaintiff*

Brian D. Clark
David W. Asp
R. David Hahn
Derek Waller
**Lockridge Grindal Nauen PLLP**
100 Washington Ave. S, Suite 2200
Minneapolis, MN 55401
T: (612) 339-6900
bdclark@locklaw.com
dwasp@locklaw.com
rdhahn@locklaw.com

Stephen J. Teti
Kristie A. LaSalle
**Lockridge Grindal Nauen PLLP**
265 Franklin St., Suite 1702
Boston, MA 02110
T: 617-535-3763
sjteti@locklaw.com
kalasalle@locklaw.com

Kyle J. Pozan
**Lockridge Grindal Nauen PLLP**
1165 N. Clark Street
Suite 700
Chicago, IL 60610
T: 312-205-8968
kjpozan@locklaw.com

*Counsel for the Live Well Plaintiff*

Joseph P. Guglielmo (N.D. Ill. Bar No. 2759819)
Robin A. van der Meulen (pro hac vice forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building

230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
jguglielmo@scott-scott.com
rvandermeulen@scott-scott.com

Patrick J. Coughlin (pro hac vice forthcoming)
Carmen Medici (pro hac vice forthcoming)
Jonathan Smallwood (pro hac vice forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-798-5319
pcoughlin@scott-scott.com
cmedici@scott-scott.com
jsmallwood@scott-scott.com

Patrick McGahan (pro hac vice forthcoming)
Michael Srodoski (pro hac vice forthcoming)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 S. Main St.
Colchester, CT 06415
Telephone: 860-531-2606
pmcgahan@scott-scott.com
msrodoski@scott-scott.com

***Counsel for the Lake Martin Plaintiffs***